IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| BURT A. SMITH, § | | |
| Institutional ID No. 25379-380 § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No. 1:20-CV-00182-BU | |
| § | | |
| ROLLING PLAINS DETENTION § | | |
| CENTER, *et al.*, § | | |
| § | | |
| Defendants. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Burt A. Smith, a prisoner incarcerated by the Federal Bureau of Prisons and proceeding pro se, filed this civil action on September 1, 2020, complaining of civil rights violations that allegedly occurred during his time as a detainee at the Rolling Plains Detention Center. Dkt. No. 1. The Court granted Smith leave to proceed in forma pauperis, which subjects his Complaint to the Court's preliminary judicial screening measures under 28 U.S.C. § 1915(e)(2). Dkt. No. 10.

Under 28 U.S.C. § 636(b) and an order of transfer, this civil action was transferred to the undersigned United States magistrate judge. Dkt. No. 11. The Court ordered Smith to complete a screening questionnaire, which Smith did. Dkt. No. 15. Smith has not consented to proceed before a magistrate judge. Therefore, in accordance with the Court's transfer order, the undersigned enters these findings and conclusions, and based on the

1

undersigned's review of Smith's Complaint, his questionnaire responses, and the authenticated records, recommends that Smith's claims be dismissed.

## I.  BACKGROUND

In his Complaint, Smith complains about the adequacy of medical care he received at Rolling Plains over the course of a ten-day period, beginning on May 12, 2020, and ending on May 21, 2020.

On May 12, 2020, Smith reported that he was experiencing severe chest pain and difficulty breathing. Dkt. No. 1 at 3. Rolling Plains medical staff examined Smith and checked his blood pressure, allegedly telling Smith that "there was nothing wrong." *Id*. Smith renewed his complaints of severe chest pain on May 13, 2020 to an unidentified correctional officer, who Smith states contacted medical staff, but "medical never responded." *Id*. Smith received medical attention the following day, May 14, when medical staff again examined Smith's blood pressure readings and informed Smith that he "would be kept in an observation cell overnight and seen by a doctor on May 15." *Id.* at 4.

Although Smith does not state whether he in fact received medical attention on May 15, 2020, the medical records provided by Rolling Plains indicate that medical staff examined Smith on that day and diagnosed him with costochondritis and pneumonitis. Medical staff prescribed Smith medication and made preparations for Smith to receive a chest x-ray at Haskell Memorial Hospital.

In the meantime, Smith's complaints about continued chest pain on May 16 went unanswered, and he continued to report symptoms of chest pain and breathing difficulty from May 17 to May 19, 2020. *Id*. at 4–5. On May 19, Smith claims he was once again

escorted to the medical department where he received an EKG and waited for approximately five and a half hours. *Id.* at 5. Thereafter, Smith states that he "was transported to a local hospital" where he received a chest x-ray, a claim that is consistent with Rolling Plains medical records. *Id.*

Smith alleges that Health Administrator Shaginaw, a Rolling Plains employee, called Haskell Memorial Hospital on May 20, 2021, and spoke with a Jane Doe hospital employee about Smith's x-rays. *Id.* According to Smith's Complaint, Shaginaw gave Jane Doe "instructions on how to look up/research results on Smith's x-rays." *Id.* Smith alleges that Jane Doe informed Shaginaw that "it was lung inflammation or the muscle wall on Smiths ribs." *Id.* Smith then contends that defendant King, a nurse at Rolling Plains, "prepared a shot unknown and administered 2 unknown pills/prescription(s)" at the instruction of Shaginaw. *Id.* at 6. Smith was then returned to his assigned housing unit.

Smith alleges that Rolling Plains jail officials found him unconscious in his assigned housing unit and rushed him to the emergency room on the morning of May 21, 2020. *Id.* This is consistent with the medical records provided by Rolling Plains, which indicate that Smith was transported by ambulance to the Haskell Memorial Hospital for emergency medical attention. Once at the hospital, Smith received a diagnosis of pericarditis and a prescription for colchicine. He was discharged from the hospital later that day.

## II. PRELIMINARY SCREENING

A court must dismiss a complaint filed in forma pauperis by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief

3

from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2016); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding in forma pauperis). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' in forma pauperis claims as frivolous based on "medical and other prison records if they are adequately identified and authenticated" (internal quotations omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## III.  DISCUSSION AND ANALYSIS

Smith sues the Rolling Plains facility and its employees, Warden Bennett, Health Services Administrator Shaginaw, and Nurse King. Dkt. No. 1 at 2–3. Smith also sues the Jane Doe Haskell Memorial Hospital employee that spoke with Shaginaw over the phone. *Id*. at 3. He seeks money damages and declaratory relief. *Id*. at 8.

A. <u>Claims Against Rolling Plains Employees Bennett, Shaginaw, and King</u>

Smith argues that Bennett, as the warden, "is responsible for Mr. Smith's health while in custody of Rolling Plains Dtn. Ctr," *id*. at 7, and claims that "she knew of incident of [Smith] having this health problem" but "nothing was done." Dkt. No. 15 at 2.

Smith complains that "RN King failed to provide adequate health care and monitor Mr. Smith's health issues[,]" and in doing so, "denied Mr. Smith proper response from health complaints." Dkt. No. 1 at 7. Smith also alleges that King acted "on May 20 with no regard to [his] health and not contacting Doctor to see what to prescribe [him]. Gave [him] a shot and 2 pills of something that a Doctor did not prescribe [him]." Dkt. No. 15 at 2.

With respect to Shaginaw, Smith alleges that she "failed to provide adequate health care and monitor Mr. Smith's health/vitals [and] denied Mr. Smith emergency care from May 12, through May 21, 2020." Dkt. No. 1 at 7. Smith further contends that Shaginaw repeatedly refused Smith's requests to be transported to a hospital and that she "acted reckless[ly] by giving instructions to a Hospital staff to find results from [his] x-ray on May 20 and then telling R.N. King what medicine to give [Smith]/misdiagnosis-wrong medication that [he had] inflammation on [his] lung wall." Dkt. No. 15 at 3. He contends that health officials informed him that "they had misread the [medical] history." *Id*.

1. <u>Smith is unable to bring a §1983 claim against Bennett, Shaginaw, and King.</u>

Smith contends that the Court has jurisdiction over this action because "this is a civil action authorized by 42 USC, Sec. 1983." Dkt. No. 1 at 1. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Although Smith invokes § 1983 as the legal basis for his claims, this statute has no applicability here. Smith, admittedly, "was at all times mentioned [in his Complaint] a federal detainee/prisoner in U.S. Marshall's [sic] custody housed at Rolling Plains Detention Center" and "in United States custody pending federal court proceedings." Dkt. No. 1 at 2. He further states that "Rolling Plains Dtn. Ctr. is appointed/deputized by and through the United States to house/detain federal defendant(s), i.e., Mr. Smith." *Id.*

The undersigned also observes that Rolling Plains is a federal detention facility operated by a private corporation.[1] This fact forecloses any § 1983 claim Smith may wish to assert against Rolling Plains employees Bennett, Shaginaw, and King because they were not acting under color of state law.

It is well settled that private corporations who have contracted with the federal government to confine federal prisoners do not act under color of state law, and neither do their employees. *See Sandoval v. Wackenhut Corr. Corp.*, 21 F.3d 1109, 1994 WL 171703 at *2 n.3 (5th Cir. 1994) ("Because Sandoval was a federal prisoner in the facility, which

---

[1] LaSalle Corrections West, L.L.C. is the private corporation that operates the Rolling Plains Detention Center. *See* Dkt. No. 23.

Wackenhut was under contract with the federal government to operate, his claims cannot be based on § 1983, because no state action was involved." (citing *West*, 487 U.S. at 48)); *see also Eltayib v. Cornell Companies, Inc.*, 533 F. App'x. 414, 414–15 (5th Cir. 2013) (per curiam) ("Cornell, GEO, and their employees are not subject to suit as state actors under § 1983. BSCC is a federal prison and '§ 1983 applies to constitutional violations by state, rather than federal, officials.'").

Because there is no conduct that could reasonably be attributed to a state actor, Smith fails to allege an essential element of a § 1983 claim. Therefore, the Court should dismiss any claims Smith seeks to assert under 42 U.S.C. § 1983 against Bennett, Shaginaw, and King.

2. No *Bivens* remedy exists against Bennett, Shaginaw, and King.

Smith claims that Bennett, Shaginaw, and King violated his constitutional rights while he was a federal detainee at Rolling Plains. Accordingly, this civil action may be fairly interpreted as arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

In *Bivens*, the United States Supreme Court recognized an implied cause of action for money damages against federal officers for deprivation of certain constitutional rights. *Id*. at 397. And since that decision, the Supreme Court "has approved of an implied damages remedy under the Constitution itself" only three times – in *Bivens*, 403 U.S. at 397 to enforce "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" in violation of the Fourth Amendment; in *Davis v. Passman*, 442 U.S. 228 (1979), holding "that the Fifth

7

Amendment Due Process Clause gave [a Congressman's administrative assistant] a damages remedy for gender discrimination"; and in *Carlson v. Green*, 446 U.S. 14 (1980), holding "that the Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner] a damages remedy for failure to provide adequate medical treatment." *Ziglar v. Abbasi*, 137 S. Ct. 1843,1854–55 (2017).

Although Smith does not specifically invoke *Bivens* as the basis for his claims, federal courts have consistently construed actions brought by federal prisoners alleging constitutional violations as *Bivens* claims. "Because *pro se* complaints are liberally construed, the courts apply § 1983 or *Bivens* according to the actual nature of the claims, not the label or characterization of a *pro se* plaintiff." *Montgomery v. Deitelbaum*, No. 3:09-CV-2407-M-BH, 2010 WL 582146, at *2 (N.D. Tex. Feb. 18, 2010) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 675–76 (2009) ("In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.'") (citations omitted); *Abate v. Southern Pac. Transp. Co.*, 993 F.2d 107, 110 n.14 (5th Cir. 1993) (noting that *Bivens* applies to constitutional actions by federal, rather than state, officials). Despite liberally construing the allegations in Smith's Complaint, however, there is simply no *Bivens* remedy available against Bennett, Shaginaw, and King.

The Supreme Court in *Minneci v. Pollard*, 565 U.S. 118 (2012) expressly declined to create an implied damages remedy in the Eighth Amendment context against employees of a privately-operated federal prison. *Minneci* involved a federal prisoner, housed at a facility operated by a private company, who alleged that prison employees had deprived

him of medical care in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* at 121. In declining to recognize a *Bivens* remedy against the private employees, the Court noted that the fact of government employment status "makes a critical difference." *Id.* at 126. The Court ultimately held that the prisoner could not assert a *Bivens* claim against private prison employees because the alleged conduct typically fell within the scope of state tort law, which "provides an 'alternative, existing process' capable of protecting the constitutional interests at stake." *Id.* at 125 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

Following *Minneci*, the Fifth Circuit has held in several unpublished opinions that employees of private corporations that operate federal prisons are not liable under *Bivens* for Eighth Amendment violations where the conduct at issue falls within the scope of state tort law. *See Ayala-Gutierrez v. Doe*, 697 F. App'x 285, 286 (5th Cir. 2017) (per curiam) (holding that private prison operated by GEO Group, Inc. and its employees "cannot be liable as private actors under *Bivens*."); *Rodriguez v. Giles W. Dalby Corr. Facility*, 552 F. App'x 382, 383 (5th Cir. 2014) ("[B]ecause [defendant] is a private facility, no *Bivens* action is available against either the prison or its employees."); *Eltayib*, 533 F. App'x at 415. Here, as in *Minneci*, Smith seeks damages where the conduct alleged amounts to a violation of the Eighth Amendment when the defendants allegedly deprived Smith of adequate medical care. And as the Supreme Court noted in *Minneci*, Texas law imposes general tort duties of reasonable care on prison employees. *See* 565 U.S. at 129 (citing *Salazar v. Collins*, 255 S.W.3d 191, 198–200 (Tex. App.—Waco 2008, no pet.)).

Under Texas law, a prisoner may pursue medical malpractice claims against a prison healthcare provider. *Tejeda v. Gernale*, 363 S.W.3d 699, 701 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Texas law also provides that a prisoner alleging an Eighth Amendment violation may bring an action for monetary damages against a prison employee. *Birdo v. Debose*, 819 S.W.2d 212, 215–16 (Tex. App.—Waco 1991, no writ). The remedies available through *Bivens* and state tort law "need not be perfectly congruent" so long as they "provide roughly similar incentives for potential defendants to comply with the Eighth Amendment" and "roughly similar compensation to victims of violations." *Minneci*, 565 U.S. at 129–130.

Because state tort law provides remedies for the alleged harm, the Court should find that no *Bivens* remedy exists and dismiss Smith's claims against Bennett, Shaginaw, and King as barred by *Minneci*.

B. <u>Claims against the Rolling Plains Detention Center</u>

No *Bivens* remedy is available against the Rolling Plains facility itself. A *Bivens* action only provides a remedy for victims of constitutional violations by federal employees in their individual capacities; it does not provide a cause of action against the United States. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). Moreover, the Supreme Court expressly declined to extend *Bivens* liability to private corporations charged with operating prison facilities. *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001).

In *Malesko*, the Supreme Court found no private right of action against the private corporation managing a Bureau of Prisons facility, noting that even prisoners housed in

10

Bureau of Prisons run facilities "may not bring a *Bivens* claim against the officer's employer, the United States, or the [Bureau of Prisons]" because such suits are permitted only against federal officers. *Id.* at 72. In sum, "*Bivens* . . . is concerned solely with deterring the unconstitutional acts of individual [federal] officers . . . , and [w]hether it makes sense to impose asymmetrical liability costs on private prison facilities alone is a question for Congress . . . ." *Id.* at 71–72; *FDIC v. Meyer*, 510 U.S. 471, 485 (1994) ("It must be remembered that the purpose of *Bivens* is to deter *the officer.*").

Therefore, the Court should find that no *Bivens* remedy exists against Rolling Plains and dismiss Smith's claims against it as barred by *Malesko*.

C. <u>Claims against Jane Doe Hospital Employee</u>

Smith's claims against the Jane Doe employee at Haskell Memorial Hospital should be dismissed for failure to state a claim regardless if asserted under *Bivens* or § 1983.

A civil rights action may be initiated against unidentified defendants when their true names are not yet known but may be learned. *See Bivens*, 403 U.S. at 390 n.2 (noting that the district court ordered the complaint served upon the agents that arrested the plaintiff according to the records of the United States Attorney). "Although the use of a 'John Doe' is disfavored, it serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants." *Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007) (citing *Colle v. Brazos County*, 981 F.2d 237, 243 n.20 (5th Cir. 1993)). In certain circumstances, a plaintiff should be given the opportunity through discovery to discover the identities of unnamed defendants. *Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992). A plaintiff may identify an unknown defendant through discovery by: (1)

11

physical descriptions; (2) partial names or nicknames, position, date, time specifics of the incident; or (3) from duty roster and personnel records, records available to the defendants' representative, or known defendants who were participants in the same incident as the unknown defendants. *See id*. In this case, permitting Smith to identify this Jane Doe defendant through discovery would not change the fact that Smith's claims against her fail.

Smith concedes that Jane Doe is a private actor employed by Haskell Memorial Hospital. Specifically, he alleges that "[Jane Doe] is known by Defendant Shaginaw, works night shift. Jane Doe answered phone at hospital. Defendant Shaginaw would be able to identify her." Dkt. No. 15 at 4. Because Jane Doe is a private actor she cannot be sued under *Bivens*. *Malesko*, 534 U.S. at 72–73; *Minneci*, 565 U.S. at 126. And § 1983's "under color of state law" excludes from its reach purely private conduct, no matter how discriminatory or wrongful. *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). This is precisely the complained-of conduct at issue here. Moreover, even when taking his allegations as true, Smith fails to state a constitutional claim. Smith's chief complaint about Jane Doe is that she "was coerced into looking up x-ray results she did not know how by Shaginaw directing her to do this which resulted in misdiagnosis." Dkt. No. 15 at 4. Although negligence is a tort cognizable in state law and for which a remedy may lie in state courts, allegations of medical malpractice, negligence, or unsuccessful treatment, without more, fail to establish a cognizable claim under § 1983. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Abate*, 933 F.2d at 110 n.14.

For these reasons, the Court should dismiss Smith's claims against Jane Doe for failure to state a claim on which relief may be granted.

D.  Claim for Declaratory Relief

Smith's request for declaratory relief—that the Court grant him "a declaration that the acts and omissions described [in his Complaint] violate his rights under the Constitution and laws of the United States"—should be dismissed as moot because Smith is no longer incarcerated at the Rolling Plains facility. Dkt. No. 1 at 8.

The authenticated records received from the Federal Bureau of Prisons indicate that Smith is currently serving a term of imprisonment at the Federal Correctional Institution in Greenville, Illinois. A claim for declaratory and injunctive relief based on conditions of confinement is rendered moot upon the release or transfer of a detainee. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (even if inmate was able to establish constitutional violation, his transfer to another prison rendered moot his claim for declaratory and injunctive relief) (citing *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991)); *Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000).

Therefore, the Court should dismiss Smith's declaratory relief claim as moot.

E.  Smith's Remaining State Law Claims

The undersigned has recommended that the Court dismiss Smith's 42 U.S.C. § 1983 and *Bivens* claims. Ordinarily, when the federal claims are dismissed before trial, the court may decline to exercise supplemental jurisdiction and dismiss pendent state claims as well. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996); *St. Germain v. Howard*, 556 F.3d 261, 263–64 (5th Cir. 2009) (citing 28 U.S.C. § 1367(c)). In this case, the Court should decline to exercise supplemental jurisdiction over any remaining state law claims.

## IV.  CONCLUSION

For the above reasons, the undersigned RECOMMENDS that Smith's claims under 42 U.S.C. § 1983 and *Bivens* against Rolling Plains, Bennett, Shaginaw, King, and Jane Doe be DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. This dismissal shall be considered a "strike" within the meaning of 28 U.S.C. § 1915(g).[2] The undersigned further RECOMMENDS that Smith's claim for declaratory relief be DISMISSED as moot.

Additionally, the undersigned RECOMMENDS that the Court decline to exercise supplemental jurisdiction over any remaining state law claims.

It is ORDERED that this case be transferred back to the docket of the United States District Judge and designated as Civil Action No. 1:20-CV-00182-H.

## V.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed

---

[2] Section 1915(g), which is commonly known as the "three-strikes" provision, provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 7th day of July, 2021.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE